UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TONY NUNEZ, et al.,<br>    Plaintiffs,<br>v.<br>CITY OF SAN JOSE, et al.,<br>    Defendants. | Case No. 17-cv-03860-LHK (VKD)<br><br>**ORDER RE DISCOVERY DISPUTE RE CONFIDENTIALITY DESIGNATIONS FOR DEFENDANTS' PRODUCTION**<br>Re: Dkt. No. 61 |

The parties in this matter dispute the propriety of defendants' confidentiality designations for certain materials defendants have produced during discovery. Plaintiffs seek an order requiring defendants to de-designate certain materials that defendants have designated as "confidential" pursuant to the protective order entered by the Court because they contend those materials do not qualify for such protection and because plaintiffs wish to make those materials public and to comment publicly about those materials. Defendants argue that the materials should continue to be treated as confidential in order to protect the privacy and safety of the defendant officers and witnesses and other officers involved in this case.

The Court heard oral argument on February 5, 2019. Having considered the written submissions and oral argument of counsel, the Court grants in part and denies in part defendants' request to maintain the "confidential" designation of certain discovery material previously designated as confidential under the protective order.

## I. BACKGROUND

This action asserts claims under 42 U.S.C. § 1983 and state law for the police shooting death of Anthony Nunez ("Mr. Nunez"). Plaintiffs are Tony Nunez (Mr. Nunez's father and successor in interest) and Sandy Sanchez (Mr. Nunez's aunt and the representative of his estate).

Mr. Nunez was shot by police on July 4, 2016, and this action was filed on July 7, 2017. Defendants are the City of San Jose and Officers Michael Santos and Anthony Vizzusi.[1] Dkt. No. 14.

The parties began conducting discovery in February 2018. On March 7, 2018, over defendants' objections, the Court adopted a single-tier protective order that permitted the parties to designate materials as "confidential," restricting access to the parties, their counsel, their experts, court personnel, and other specific individuals. Dkt. No. 37 at sec. 7.2. The protective order also limited the use of designated material to "prosecuting, defending, or attempting to settle this litigation." *Id.* at sec. 7.1. The Court declined to adopt defendants' proposed protective order which would have permitted defendants to further restrict access to certain materials they consider particularly sensitive, such as the statements and personal identifying information of non-party witnesses and video and images of the defendant officers. *See* Dkt. Nos. 33, 34. In rejecting defendants' more restrictive proposed protective order, the Court acknowledged the privacy rights and safety issues defendants identified, but observed that "[t]he specter of threats to officers in this case is just speculation and the possibility that something like that could occur is not a basis for enhanced protection of discovery information." Dkt. No. 34 at 2. The Court emphasized that personal identifying information should be redacted. *Id.*

The parties have now completed fact discovery, and the case is set for trial in June 2019. Plaintiffs contend that defendants have designated as "confidential" certain discovery materials that do not qualify for protection from disclosure, including the following materials:

1. Body cam video/audio of interviews with non-party witnesses;
2. Images of non-party witnesses from video or photographs;
3. Videotaped deposition testimony from the defendant officers and other officers;
4. Images of the defendant officers and other officers from video or photographs;
5. Surveillance video of the shooting and events preceding the shooting, taken from cameras at a neighbor's house; and

---

[1] The amended complaint also asserts claims against unidentified San Jose Police Department officers as Doe defendants.

2

6. Dispatch audio recordings.

Plaintiffs argue that there is widespread public interest in this case and that defendants have not demonstrated good cause to keep the information from the public, with the exception of personal identifying information, which plaintiffs promise not to publish.

Defendants object to the de-designation and contemplated public disclosure of this information, citing the privacy interests and safety of the witnesses and police officers. Defendants rely heavily on the declaration of Lieutenant Paul Messier of the San Jose Police Department ("SJPD"). Dkt. No. 61-1. Lt. Messier says that he oversees the SJPD's Special Investigations Unit, which monitors threats to officer safety. *Id.* ¶ 2. In the course of monitoring potential threats from family and associates of Mr. Nunez after his death, the SJPD learned of several Instagram postings by Mr. Nunez's cousin, Jason Reyes (user name "dj_rhino_g"), expressing anger about the shooting of Mr. Nunez and anger against the SJPD, San Jose Mayor Sam Liccardo, and District Attorney Jeff Rosen. *Id.* ¶ 5.

In addition to expressing anger, Mr. Reyes publicly posted four messages on Instagram that Lt. Messier describes as threatening the safety of the defendant officers. The first message, posted on September 11, 2017, shows an image of an SJPD officer with the caption "HELLO, MY NAME IS OFFICER MICHAEL SANTOS AND I AM A DOUBLE MURDERER WITH SJPD," accompanied by a message that says "Let's make this murderous coward internet infamous!! PLEASE SCREENSHOT/SHARE!!!" Lt. Messier says that the image is not of Officer Santos, but of a different police officer.[2] The second message, posted on September 18, 2017, shows an image of the muzzle of a gun superimposed over an image of an SJPD badge with the caption "F--- SJPD," accompanied by a message that says "SAY THEIR NAMES" followed by a series of hashtags with the names of police shooting victims, including Mr. Nunez's, and a further remark, "and so many others . . .," followed by the hashtags "#protectyourpeople #justicenow." The third message, posted on November 30, 2017, shows an image of an unidentified man making obscene gestures in the direction of San Jose City Hall, accompanied by a message that says "A picture is

---

[2] Lt. Messier describes the post as including an image of two officers, but only one is shown in the exhibit attached to his declaration.

3

worth a thousand words…" followed by a series of hashtags, each beginning with "#f---" and the name of a City of San Jose public official or organization and concluding with the hashtags "#justiceforanthonynunez #justiceforall." The fourth message, posted on what appears to be December 15, 2017,[3] shows an image of an unidentified man, accompanied by a message that appears to quote rap lyrics critical of police shootings and the authorities' response to them. The lyrics appear to refer to the use of a weapon to hold the authorities responsible:

> These cowardly pigs like to roll through our community/murdering our Loved Ones with impunity/when will all this madness stop?/i guess it's time to pull out the .223/with the automatic bumb [sic] stock. Make 'em all pay for what they've done/since the D.A. and the Grand Jury ain't gonna do none. No justice no peace/is what i'm screamin'/better them than me/'cause I'm goin' out peelin'/i've never had faith in the system/just wondering who's gonna be their next victim.

The post is signed "DJ Rhino G" and concludes with the further remark, "F--- THE POLICE, THE D.A. AND THE GRAND JURY, AND IF YOU'RE DOWN WITH THEM, THEN F--- YOU TOO!!" followed by the hashtags "#nojusticenopeace #protectyourpeople #weride." At some point following these posts, Mr. Reyes' Instagram account was made private. *Id.* ¶ 6.

In view of the threats to officer safety contained in these posts, Lt. Messier says he is "concerned that family members or friends of Anthony Nunez could attempt to identify these officers based on a photograph or other image of them and do them harm." *Id.* ¶ 7.

## II. LEGAL STANDARDS

Documents and other materials produced in discovery may be protected from public disclosure upon a showing of "good cause" to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c); *Kamakana,* 447 F.3d 1172, 1180 (9th Cir. 2006). Good cause requires a showing of specific prejudice or harm that will result if no protective order is granted. *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002). If such a showing is made, the Court must balance the interests of the public against the interests of the private litigants to decide whether a protective order is

---
[3] The date on the image is not clear, and the year is missing.

4

warranted. *Id.* at 1211. Here, defendants are the parties seeking protection and have the burden of demonstrating good cause. *Id.*

Although plaintiffs acknowledge the "good cause" standard applies here, they also rely, in part, on what they refer to as a "First Amendment and a Federal Common Law right . . . to access and share what they learn with others in discovery." Dkt. No. 61 at 5. They do not elaborate on this contention. However, there is an important distinction between materials obtained in discovery and materials that have been filed with the Court. As the Supreme Court has observed, "judicial limitations on a party's ability to disseminate information discovered in advance of trial implicates the First Amendment rights of the restricted party to a far lesser extent than would restraints on dissemination of information in a different context." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984). The calculus changes once materials obtained in discovery are filed with the Court in support of a dispositive motion or offered in evidence at trial. "Unlike private materials unearthed during discovery, judicial records are public documents almost by definition, and the public is entitled to access by default. This fact sharply tips the balance in favor of production when a document, formerly sealed for good cause under Rule 26(c), becomes part of a judicial record." *Kamakana*, 447 F.3d at 1180 (citation omitted).

## III. DISCUSSION

### A. Defendants' Showing of Good Cause

The Court first considers whether defendants have made the required showing of specific prejudice or harm that the Rule 26(c) "good cause" standard requires.

#### 1. Non-party witnesses

It is not clear from the record how many witnesses were videotaped by the SJPD and how many gave statements to the SJPD that were recorded by other means. The Court is advised that at least some of the surveillance video from a neighbor's house includes video of non-party witnesses, including Mr. Nunez' girlfriend who was a minor at that time. None of the non-party witnesses participated in the joint discovery dispute submission, and the parties had not consulted with them as of the date of the hearing.

Citing the inflammatory nature of the 2017 Instagram posts, defendants assert that good

cause exists for the continued protection of the video and audio of non-party witnesses in order to ensure the privacy and safety of such witnesses in advance of trial. However, defendants say that transcripts of the video and audio recordings of non-party witnesses may be publicly disclosed without compromising those interests, so long as steps are taken to redact personal identifying information of those witnesses. Plaintiffs suggest that the witnesses in question made statements favorable to plaintiffs' case and are unlikely to object to public disclosures of the recordings, save for personal identifying information and video of minor witnesses. Plaintiffs contend their public disclosures should not be restricted to the written transcripts of these recordings.

The Court is concerned that the interests of the non-party witnesses in the disclosure sought by plaintiffs have not been adequately represented before the Court. Accordingly, counsel for plaintiffs must serve a copy of the joint submission on each non-party whose recorded interview or statement plaintiffs ask the Court to de-designate, together with a copy of this order. Any such non-party may indicate the extent to which he or she objects or does not object to disclosure by filing a notice with the Court no later than March 22, 2019. Discovery material containing statements or images of non-party witnesses will retain their existing designations until the Court issues a further order.

### 2. Officers

Defendants have not shown good cause to designate as confidential the written transcripts of the depositions of the defendant officers and other officers involved in the shooting, except to the extent those transcripts reveal the home addresses and other sensitive, personal identifying information of the officers. In fact, defendants do not contend otherwise so long as sensitive information about the officers is redacted. Dkt. No. 61 at 4. These depositions transcripts must be de-designated, subject to the aforementioned redactions.

It is difficult for the Court to accurately assess whether de-designating video and still images of the defendant officers and other officers put them at increased risk of harm in this case. On the one hand, the purported threats from Mr. Reyes were made well over a year ago and defendants do not suggest that anyone has made more recent threats against the police or others in connection with this matter. Furthermore, the Court is reluctant to treat the statements that

defendants characterize as most concerning—the references to use of a gun and violence against the authorities—as actual threats of violence without more context, given that the statements appear to be part of a rap lyric. *See* Motion for Leave to File Brief as *Amici Curiae* and Brief of *Amici Curiae* Michael Render ("Killer Mike"), Erik Nielson, and Other Artists and Scholars in Support of Petitioner, *Knox v. Commonwealth of Pennsylvania* (Mar. 6, 2019) (No. 18-949) (describing rap music's genesis in political protest and potential for misinterpretation of lyrics as threat). On the other hand, the statements by Mr. Reyes that most concern the Court are those that target the officers by name. The Court notes that these officer-specific remarks are directed to making the defendant officers "internet infamous" and do not necessarily include threats to the officers physical safety. However, plaintiffs advise the Court that they intend to conduct press conferences about this case. Plaintiffs' counsel argued at the hearing that he prefers to use the video and images of the officers in such press conferences precisely because such video and images have the potential to create the emotional impact a transcript does not. While nothing in this order restricts counsel's ability to speak publicly about this case, at least one practical effect of such conduct may be enhanced risk to the physical safety of the defendant officers and other officers, whether from family and friends of Mr. Nunez or from others in the community.[4]

In these circumstances, defendants have shown good cause to designate discovery material containing video and still images of the defendant officers and other officers as "confidential" under the protective order.

### 3. Event material

The Court understands that the surveillance video taken from cameras located at a neighbor's house include video from before and during the shooting of Mr. Nunez, but infers that this video is taken from a distance and does not include close up images of the defendant officers, other officers, or witnesses. Defendants have not shown good cause to designate as confidential video that a citizen (or his or her camera) recorded of events taking place in public. There is one

---

[4] The Court reminds counsel of their obligations under Cal. Rule of Prof. Conduct 5-120 and any other restrictions on pre-trial publicity that Judge Koh may impose to avoid conduct that would prejudice the fairness of the trial in this case.

caveat to this conclusion, however. The Court is advised that the surveillance video includes images of Mr. Nunez's minor girlfriend and possible other minor witnesses.

The Court finds that there is good cause to designate as "confidential" those portions of the surveillance video that include such minor witnesses. The Court understands that plaintiffs do not object to such restrictions on the public display of the surveillance video.

Defendants say that the dispatch audio relating to Mr. Nunez's shooting spans eleven hours and includes audio of other incidents as well personal identifying information of officers and witnesses. Defendants do not object to public disclosure of written transcripts of the case-specific portions of the dispatch audio, nor do they object to public disclosure of the "CAD chronology" of the dispatch, so long as those materials are redacted to obscure any personal identifying information. Plaintiffs ask the Court to order defendants to de-designate the entirety of the eleven-hour dispatch audio file.

Defendants have not shown good cause to maintain the "confidential" designation with respect to the portions of the dispatch audio file that are specific to this matter and do not contain personal identifying information of police officers or other witnesses.[5] However, the burden of segregating this audio from the other audio, which may not be publicly disclosed, must fall to plaintiffs. If plaintiffs wish to publicly disclose a portion of the dispatch audio file that concerns this case and that does not contain personal identifying information, they must first give counsel for defendants notice and an opportunity to object to the public disclosure of those portions. Any such objections, if not resolved by the parties, may be brought to the Court's attention using the discovery dispute resolution procedures in the Court's Standing Order for Civil Cases.

**B.      Balance of Interests**

Defendants have shown good cause to designate as "confidential" discovery material containing video and still images of the defendant officers and video and images of minor witnesses. The Court now considers whether the interests of the public in access to this material

---

[5] Although the possibility may be remote, to the extent that the dispatch audio contains non-party witness interviews or statements, the dispatch audio is also subject to the requirement that the affected non-parties be given notice and an opportunity to object, as discussed above.

8

outweighs the private interests of defendants.

There is no dispute that this is a case in which the public has an interest. In particular, the public has a strong interest in learning of the circumstances that resulted in Mr. Nunez's shooting and death and in the conduct of the SJPD and other law enforcement authorities at the time of the shooting and after it occurred. In view of the Court's discussion of good cause above, no confidentiality designation will prevent plaintiffs from disclosing the officers' transcribed deposition testimony (subject to redactions), the neighbor's surveillance video (except for video of minor witnesses), or the portions of the dispatch audio file specific to the events at issue in this case (without personally identifying information). The question is whether the public's interest in viewing video and images of the defendant officers outweighs the officers' interest in protecting against threats to their personal safety. The Court concludes that the public's interests do not outweigh these private interests. Plaintiffs have access to, and may make public (subject to other restrictions not at issue here), extensive materials obtained in discovery. Their ability to prepare their case for trial and to speak publicly about the facts of the case is not impeded by the restrictions the Court imposes on the public disclosure of video and images of the officers.

For these reasons, the videotaped deposition testimony of the defendant officers and any other images of them obtained in discovery and designated as "confidential" must remain so unless and until the Court orders otherwise.

**IT IS SO ORDERED.**

Dated: March 8, 2019

VIRGINIA K. DEMARCHI
United States Magistrate Judge