**JOHN L. BURRIS, ESQ., SBN 69888**
**ADANTE D. POINTER, ESQ., SBN 236229**
**LATEEF H. GRAY, ESQ., SBN 250055**
**PATRICK M. BUELNA, ESQ., SBN 317043**
**LAW OFFICES OF JOHN L. BURRIS**
7677 Oakport Street Suite 1120
Oakland, California 94621
Tel: (510) 839-5200
Fax: (510) 839-3882
John.Burris@johnburrislaw.com
Adante.Pointer@johnburrislaw.com
Lateef.Gray@johnburrislaw.com
Patrick.Buelna@johnburrislaw.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### (SAN JOSE DIVISION)

| | |
|---|---|
| TONY NUNEZ, individually and as a successor-in-interest to Decedent ANTHONY NUNEZ and THE ESTATE OF ANTHONY NUNEZ by and through its personal representative SANDY SANCHEZ,<br><br>            Plaintiffs,<br><br>      v.<br><br>MICHAEL SANTOS, individually and in his capacity as an officer for the San Jose Police Department; ANTHONY VIZZUSI, individually and in his capacity as an officer for the San Jose Police Department,<br><br>            Defendants. | Case No.: 5:17-cv-03860-LHK<br><br>**PLAINTIFFS' TRIAL BRIEF**<br><br>**Trial Date:** June 17, 2019<br><br>**Time:** 9:00 AM<br><br>**Hon. Lucy H. Koh**<br>**Northern District Judge** |

# TRIAL BRIEF

**1. Evidence Must Be Focused on July 4, 2016 and the Information Defendants Acted On When Using Force, Not Pre- or Post- Incident Evidence**

Defendants submitted witnesses, expert witnesses and exhibits that focus on almost everything but the subject incident on July 4, 2016. However in a wrongful death and excessive force case against an officer, the focal point of the case is the information the Defendant officers knew and the conduct of the victim – and whether that victim present an *immediate threat of serious bodily harm* to officers and others. See *N.E.M. v. City of Salinas*, 761 Fed.Appx. 698, 699 (9th Cir. 2019); *Estate of Lopez by and through Lopez v. Gelhaus*, 871 F.3d 998 (9th Cir. 2017).

The Ninth Circuit has cautioned that "the prohibition against evaluating officers' actions 'with 20/20 vision of hindsight' cuts both ways" and that in evaluating those circumstances facing an officer, they cannot rely on evidence that the officers were not then aware. *Glenn v. Washington Cnty*, 673 F.3d 864, 873, fn. 8 (9th Cir. 2011).

Officers "need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within that range of conduct we identify as reasonable." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1995). Nevertheless, "police are 'required to consider [w]hat other tactics if any were available,' " and if there were "clear, reasonable and less intrusive alternatives" to the force employed, that "militate[s] against finding [the] use of force reasonable." *Glenn v. Washington County*, 673 F.3d 864, 876 (9th Cir. 2011); *see also Santos v. Gates,* 287 F.3d 846 (9th Cir. 2002)(ruling that even pushing a person that is passively resisting and causing injury may be unreasonable force and denying qualified immunity on that basis).

Ultimately, the jury must decide whether not Defendant officers used unreasonable force against decedent Anthony Nunez, not whether every ancillary possibility of negligence may have occurred. "Claims of excessive force under California law are analyzed under the same standard

of objective reasonableness used in Fourth Amendment claims." *Hayes v. Cty. of San Diego,* 736 F.3d 1223, 1232 (9th Cir. 2013).

For example, for the first time, in Defendants' jury instructions and verdict form they allege negligence against Sandy Sanchez (who was not present for the incident) and Juan Cervantes (who was handcuffed and in the back of a police car when Defendant officers shot). Alleging negligent conduct against nonparties, opens the door to negligent conduct of each and every officer and witness on scene that would take several weeks to litigate (including officers Raghavan, Crawley, Boyle, Joseph…etc.). By principle, there is a prohibition of litigation of collateral issues, because under Rule 403 one is "creating a side issue which might distract the jury from the main issues." *Blancha v. Raymark Industries*, 972 F.2d 507, 516 (3d Cir. 1992); Rockwell v. Yukins, 341 F.3d 507, 213 (6th Cir. 2003) (en banc); *Arlio v. Lively*, 474 F.3d 46, 53 (2d Cir. 2007).

Other examples are: Defendants attempts to include decedent Anthony Nunez's behavior from the days preceding July 4, 2016, which officers knew nothing about; witness information from Jose Sanchez (not present during the incident) that Anthony Nunez was possessed by occult spirits; prejudicial information about Plaintiff Tony Nunez that has nothing to do with his loss of relationship with his son, decedent Anthony Nunez; pre-incident phone messages; speculative theories from Dr. Keram that Anthony Nunez committed suicide by cop but admitted she cannot conclude Anthony Nunez actually committed suicide by cop; Anthony Nunez's toxicology report and alleged pre-incident drug use/criminal history. None of these categories of evidence, information and/or testimony are relevant to a use of force analysis for Defendant officers.

Defendants largely rely on *Boyd v. CCSF*, 576 F.3d 938 (2009) to argue Dr. Keram's speculative testimony on decedent's mental state, decedent's drug/criminal history, witnesses pre-incident testimony should be admitted and other prejudicial information (that Defendants were not aware of). However *Boyd* is a unique set of facts and distinguishable from almost every other 1983 action in the Ninth Circuit's admission of unrelated and speculative psychiatric testimony that are not present here.

In *Boyd*, the suspect, Cammerin, shot at San Francisco police out the window of his car twice while they pursued him. *Boyd*, supra at 942. When San Francisco officers finally detained him, Cammerin put his hands up, but then lunged for something in his car triggering officers to shoot him. *Boyd*, supra at 942. Furthermore, just two weeks prior Oakland police had stopped Cammerin and found rap lyrics about murdering police officers and a news article about murdering police officers. *Id.* Then three days before the incident, Oakland police officers detained Cammerin again and he screamed at them, "kill me" and "filthy white racists". *Id.* Furthermore, Cammerin had two prosthetic legs, because he lost his legs evading police, crashed his car and blamed officers for his injuries. *Id.*

The Court permitted Dr. Keram and conjunctive pre-incident evidence to come in because in these unique circumstances, Dr. Keram's testimony was probative of Cammerin's intent because it was the "anniversary of Cammerin losing his legs and suicides and attempted suicides occur more frequently around significant anniversaries, and as Cammerin was shot around the eleven-year anniversary of the car crash that resulted in the loss of his legs. The court also found the circumstances surrounding the accident to be particularly probative, since they made it more likely that Cammerin blamed the police for his loss and would seek retribution from them by exposing them to liability, while at the same time accomplishing his own suicide."

Here, none of the factors that made *Boyd* a uniquely applicable case for police suicide exist for Anthony Nunez. Nowhere in the record is there any mention that Anthony Nunez disliked police, had an encounter with the police preceding in which he expressed suicidal/homicidal ideations, blamed any loss or injury in his life on police, or expressed any anger at the police. In fact, all of the evidence points to Anthony Nunez being depressed that his mother (who died at childbirth) was no longer living, that he missed Plaintiff Tony Nunez, his aunt and uncle, and was being convinced by Officer Dalaison not to commit suicide just minutes prior to Defendant Officers killing him. Therefore, this case should focus solely on what officers were aware of at the time, not a multitude of evidence and theories that there is no reasonable basis in record from which to speculate and assert Anthony Nunez's circumstances were similar

enough to *Boyd* to permit the same kind of prejudicial information that is normally excluded in these cases. *See Refugio Nieto v. CCSF, et al.,* Case No.: 3:14-cv-03823-NC, Dkt #117, pp. 5-8 (N.D. 2016) (excluding Keram's opinion that decedent's preshooting conduct was consistent with suicide by cop because her opinion did not meet muster under *Daubert*, was irrelevant under FRE 401 and outweighed by its prejudicial effect under FRE 403); *Gwendolyn Woods v. CCSF, et al.,* Case No: 3:15-cv-05666, Dkt #117, pp. 8 (N.D. 2019) (excluding Keram from speculating about a decedent's mental health because "she never treated him and because she relied on only a limited amount of information in her report".

Therefore, all information, evidence and testimony not known to the officers on July 4, 2016 should be excluded including witnesses and testimony.

**2. Extraneous Expert Witnesses Should Not Be Permitted to Testify**

In this vein of reasoning, Defendants should also not be able to offer non-retained experts that produced (1) no report and (2) are not inextricably linked to the case. The unretained expert is "an actor with regard to the occurrences from which the tapestry of the lawsuit was woven," with the opinion testimony arising not from enlistment as an expert but from "ground-level involvement in the events giving rise to the litigation." *Downey v. Bob's Discount Furniture Holdings, Inc.,* 633 F3d 1, 6 (1st Cir. 2011)(internal quotes omitted); *Fielden v. CSX Transp., Inc.* (6th Cir. 2007) 482 F3d 866, 869.

Defendants designated and included Captain Jason Dwyer on their expert witness list in regards to the SJPD officers use of force and compliance with SJPD policies. This expert designation is duplicative of their police practices expert Scott Seaman, but Dwyer did not produce a report. Moreover, Captain Dwyer did not respond to the incident, did not conduct and produce a report in connection with the investigation into the incident and was therefore required to have produced a report under Rule 26(a)(2)(B) – but did not. Therefore, Captain Dwyer should be precluded from offering testimony at trial, whatsoever.

| | |
|---|---|
| Dated: June 10, 2019 | /s/*Patrick Buelna* <br> Attorney for Plaintiffs |